[Cite as *In re M.S.*, 2019-Ohio-4150.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: M.S.

C.A. No.    29348

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 17-04-0284

DECISION AND JOURNAL ENTRY

Dated: October 9, 2019

SCHAFER, Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed the child M.S. in the legal custody of his maternal grandfather ("Grandfather"). This Court affirms.

I.

{¶2}    Mother is the biological mother of M.S. (d.o.b. 10/3/08). The child's father is deceased. Mother has mental health, physical, and medical issues that prevent her from living independently. M.S. was living with Mother in a home with the child's maternal grandmother ("Grandmother") and step grandfather ("Step Grandfather") when Summit County Children Services Board ("CSB" or "the agency") filed a complaint alleging multiple bases that the child was an abused and dependent child. Specifically, CSB alleged that M.S. had been sexually abused by Step Grandfather and physically abused by all three adult household members, that the child was exhibiting sexualized behaviors and mental health issues, that Mother exhibited mental

health issues, and that Grandmother and Step Grandfather were evicting Mother and M.S. from the home. CSB obtained an emergency order of temporary custody of the child and placed him with an aunt. When that placement later disrupted, M.S. was placed with Grandfather.

{¶3} Mother waived her rights to an adjudicatory hearing and the parties stipulated that M.S. was a dependent child. CSB withdrew its allegations of abuse. Mother again waived her rights to a hearing at disposition and agreed to an order placing the child in the temporary custody of CSB. The juvenile court adopted the agency's proposed case plan as the order of the court. CSB later moved for a first six-month extension of temporary custody, which the juvenile court granted based on an agreement by the parties.

{¶4} When M.S. had been out of his home for ten months, CSB filed a motion for legal custody to a relative, specifically Grandfather. Mother filed a motion for legal custody. The magistrate heard the matter and issued a decision granting the agency's motion and placing the child in the legal custody of Grandfather. Mother filed timely objections to the magistrate's decision.

{¶5} The juvenile court issued a judgment in which it overruled Mother's objections, placed M.S. in the legal custody of Grandfather, granted Mother liberal visitation with the child in the community or Grandfather's home, issued a $0 child support order, and prohibited the child from being near Step Grandfather. The juvenile court appointed appellate counsel for Mother and she filed a timely appeal.

II.

{¶6} In lieu of a merit brief, appellate counsel filed a brief on Mother's behalf pursuant to *Anders v. California*, 386 U.S. 738 (1967), and sought permission to withdraw from further representation in this appeal. Appellate counsel served Mother with a copy of the brief, and this

Court's magistrate issued an order allowing Mother the opportunity to file a response. Mother filed a timely response.

{¶7} Mother's appellate counsel submitted one possible issue for review: whether the juvenile court's award of legal custody of M.S. to Grandfather was against the manifest weight of the evidence. Appellate counsel concluded that the argument lacks merit. In her response, Mother echoes the argument that the juvenile court's judgment was against the manifest weight of the evidence.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶8} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶9} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-

1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶10} This Court has fully and independently reviewed the record, and we agree with Mother's counsel that there is no merit to the proposed issue. The juvenile court's award of legal custody to Grandfather is not against the manifest weight of the evidence. The environment in the home Mother shares with Grandmother and Step Grandfather continues to be stressful and contentious. Mother reported to her behavioral health specialist that she and Grandmother engage in screaming matches over disagreements regarding the discipline of the child. Both the behavioral health specialist and Mother's mental health counselor testified that Mother reported ongoing sexual abuse by Step Grandfather and Mother's stepbrother wherein the men would touch Mother's breasts and make sexually explicit comments to her. The specialist testified that Step Grandfather gave Mother money as a child in exchange for touching her breasts, but that the payments stopped as Mother got older. Although Mother denied during her testimony that the sexual groping continued, she admitted that Step Grandfather touched her breasts on one

occasion approximately ten years earlier and that Grandmother was aware of the incident. It was Mother's understanding that Step Grandfather attended one counseling session as a result of the incident and that the counselor had no concerns.

{¶11} M.S. reported that Step Grandfather has fondled the child's penis during showers. Both Mother and Grandmother testified that the child later said that he had lied about the sexual touching. Mother does not believe that Step Grandfather would ever do such a thing despite her own admission that he had touched her inappropriately.

{¶12} Mother suffers from numerous physical and mental ailments. She has epilepsy, hydrocephalus, depression, and debilitating anxiety that cannot be controlled by medication. Mother readily admitted that she is unable to live independently and that she relies on Grandmother and Step Grandfather for care and support. Both Mother's behavioral health specialist and counselor agreed that Mother could not independently take care of herself, let alone a child. Grandmother described every day for Mother as a struggle and admitted that Mother would not be able to protect herself from unwanted touchings by other household members due to her disabilities. Despite the indication that Step Grandfather had touched both Mother and M.S. inappropriately without any intervention by Grandmother, Grandmother asserted that she would be able to protect both Mother and the child in her home.

{¶13} The child's guardian ad litem reported that his sole concern is the child's exposure to Step Grandfather based on accusations against Step Grandfather by both Mother and M.S. despite the child's subsequent recanting of the allegations. The guardian ad litem recognized the love and bond between Mother and the child, as well as the physical adequacy of Mother's home. Nevertheless, because Mother is incapable of living independently and protecting herself and/or the child, and because she resides with Step Grandfather who poses a

potential risk to M.S., the guardian ad litem opined that it would be in the child's best interest to reside in the legal custody of Grandfather.

{¶14} The guardian ad litem reported that Grandfather's home is appropriate and that the child is comfortable and well-adjusted there. M.S. is doing well in school and his behavioral issues have abated. The child demonstrates love and respect for Grandfather. The two particularly enjoy fishing together. Although the child expressed a desire to live with Mother and have access to his games, toys, and prior bedroom, M.S. has reported being angry with Grandmother and Step Grandfather due to the arguing and "chaos" in that home. In the best interest of the child, the guardian ad litem recommended legal custody to Grandfather, liberal unsupervised visitation between Mother and the child, and no unsupervised contact between M.S. and Step Grandfather.

{¶15} Upon review of the record, this Court agrees with Mother's appellate counsel that the manifest weight of the evidence argument does not present a meritorious and non-frivolous issue for consideration on appeal.

{¶16} Mother independently argues that her efforts to regain custody of the child were prejudiced by a caseworker who modified Mother's case plan objectives in a manner to which Mother did not agree. "A party may not object to matters regarding case plan implementation for the first time on appeal." *In re N.L.*, 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶ 33. The record contains no indication that Mother objected to any case plan proposed by CSB.

III.

{¶17} Having independently and fully reviewed the record and having found that no appealable issues exist, this Court concludes that Mother's appeal is meritless and wholly frivolous pursuant to *Anders*. Mother's appellate counsel's motion to withdraw from further

representation is granted. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

C.S., pro se, Appellant.

AMBER CROWE, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE CORGAN, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.